# In re STOUFFER.

[Cite as *In re Stouffer* (1991), 76 Ohio App.3d 181.]

Court of Appeals of Ohio,
Athens County.

No. 1457.

Decided Nov. 4, 1991.

*Lee I. Fisher*, Attorney General, and *Thomas J. O'Connell*, Assistant Attorney General, for appellant, Ohio Department of Mental Retardation & Developmental Disabilities.

*Robert R. Jones*, Assistant Prosecuting Attorney, for appellee Athens County Children Services.

*Sowash, Carson & Shostak* and *Herman A. Carson*, for appellees Harry and Barbara Stouffer.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment, entered by the Probate Court of Athens County, ordering the Ohio Department of Mental Retardation & Developmental Disabilities (hereinafter "ODMRDD"), appellant herein, to select, and contract with, a suitable agency to act as guardian and/or protector of Ann Stouffer, a minor child. Appellant assigns the following errors:

"I. The trial court erred in finding that the Ohio Department of Mental Retardation and Developmental Disabilities has a statutory obligation under Ohio Revised Code sections 5123.56 and 5123.58 to contract with an agency that will provide guardianship services for minors.

"II. The trial court erred in overlooking that Ohio Revised Code section 5123.93 compels a finding that guardianship services be provided by the Athens County Board of Children Services."

A short summary of the facts pertinent to this appeal is as follows. The minor child, Ann Stouffer, was born on February 25, 1987, and was subse-

quently diagnosed as being developmentally disabled in that she suffers from, among other things, cerebral palsy and mental retardation. Ann has been in the temporary custody of the Athens County Children Services (hereinafter "ACCS"), appellee herein, since September 22, 1987, by order of the Athens County Juvenile Court.

On December 5, 1989, and January 8, 1990, ACCS filed, respectively, a request and amended request with the Athens County Probate Court seeking the appointment of ODMRDD, or alternatively an agency under its contract, as guardian and/or protector of Ann Stouffer. ACCS asserted that the basis for such request was that Ann was, at that time, placed in a facility licensed by ODMRDD and that, if appointed guardian, ODMRDD would have the expertise to oversee and direct Ann's care and treatment whereas ACCS did not.[1]

The matter proceeded to hearing on January 16, 1990, and thereafter supplemental memoranda were filed. The record reveals that Ann's guardian *ad litem* supported the ACCS request. However, ODMRDD opposed the request for its appointment as guardian as did Harry and Barbara Stouffer, Ann's natural parents, as well as the Ohio Legal Rights Service, which filed a brief *amicus curiae.* For the most part, opposition was focused on the argument that ODMRDD was no longer statutorily authorized to serve in the capacity as guardian and, in any event, that ACCS was required by law to provide those services necessary for Ann's care.

On June 14, 1990, the probate court issued its decision finding ODMRDD to be the appropriate agency to provide Ann with the necessary services and ordered it to contract with a suitable agency to serve as her guardian and/or protector. This appeal followed.

We will proceed by considering the assignments of error in reverse order. In its second assignment of error, ODMRDD argues that the court order below was improper because R.C. 5123.93 requires that the appropriate guardianship services were to be provided by ACCS. Without reaching a substantive interpretation of any duties imposed by that statute, we reject the argument that it is even pertinent to the cause *sub judice.*

The provisions of R.C. 5123.93 state, *inter alia,* as follows:

---

1. It would appear from the record that during the proceedings below, Ann was residing at the Cleo Children's Home in Broadview Heights, Ohio, where her treatment and care were financed by a shared funding agreement between ODMRDD and ACCS. In its brief, ODMRDD asserts that even without a guardian being appointed, it has been involved with developing treatment for Ann and is bearing most of the cost for her care.

"Mentally retarded minors shall remain under the guardianship of their parents or of a guardian appointed pursuant to Chapter 2111 * * * unless *parental rights have been terminated* pursuant to a court finding that the child is neglected, abused, or dependent * * *. If a mentally retarded minor has been found to be dependent, abused, or neglected, the county children's services board to whom *permanent custody has been assigned* * * * shall have the same authority and responsibility it would have if the child were not mentally retarded and were not institutionalized. * * *" (Emphasis added.)

Quite clearly, the application of this statute is to those situations where parental rights have been terminated and permanent custody of a mentally retarded minor has been granted to a county children's services board. In reviewing the record before us, it appears that ACCS only had temporary custody of Ann and that the parental rights of Harry and Barbara Stouffer had not been terminated. Thus, R.C. 5123.93 had no application to the case below. Appellant's second assignment of error is, therefore, overruled.

Returning to its first assignment of error, ODMRDD argues that the probate court erred in determining that it had a statutory obligation to obtain guardianship services for Ann and that it could be ordered to contract with an agency to provide those services. We agree.

The resolution of this assignment of error requires an interpretive analysis of two statutory provisions contained in R.C. Chapter 5123 pertaining to the ODMRDD. The first of these provisions, R.C. 5123.56, provides in pertinent part as follows:

"The department of mental retardation and developmental disabilities shall develop a statewide system of protective service *in accordance with rules and standards established by the department.* With respect to this program, *the department may enter into a contract with any responsible public or private agency for provision of protective service* by the agency, and the contract may permit the agency to charge the person receiving services fees for services provided." (Emphasis added.)

Consistent with the requirement that a statewide system of protective services be developed, R.C. 5123.58 provides, *inter alia,* as follows:

"An agency providing protective services under contract with the department of mental retardation and developmental disabilities may be nominated * * * as guardian, trustee, protector, conservator, or as trustee and protector of a mentally retarded or developmentally disabled person:

"* * *

"If the results of the comprehensive evaluation required under section 5123.57 of the Revised Code indicate that the person named in the nomination

is in need of protective services, the agency or service either shall reject or accept the nomination as guardian, trustee, or conservator, *subject to appointment by the probate court,* or reject or accept the nomination as protector, or trustee and protector.

"At the time the nomination is accepted *or when an appointment is made by the court,* the mentally retarded or developmentally disabled person and any person who made application for service on his behalf under this section shall be informed by the agency, service, or court of the procedure for terminating the appointment or service. * * * " (Emphasis added.)

The statutory antecedents to these provisions were enacted by the General Assembly in 1971. See Am.H.B. No. 290 (134 Ohio Laws, Part II, 1397, 1401) (originally designated as R.C. 5119.86 and 5119.88). At that time, these provisions allowed for ODMRDD to be nominated, and to accept appointment by the probate court, as guardian of a mentally retarded or other developmentally disabled person. *Id.* However, effective January 1, 1990, the authority for ODMRDD to directly serve as a guardian was deleted from the statute. See Sub.S.B. No. 46 (143 Ohio Laws, Part I, 379, 421). Despite this, and other legislative changes over the years, there has been little in the way of interpretive guidance as to the meaning and intent of the two statutes at issue herein.

Nevertheless, we are not persuaded that the plain language of these provisions supports the action taken by the probate court below. While R.C. 5123.56 does, indeed, require that ODMRDD develop a statewide system of protective services, there is no requirement that contracts be made with protective agencies to provide those services.[2] Rather, the statute merely states that ODMRDD *may* enter into such contracts. This is significantly different than a statutory mandate to contract for those services.[3]

---

**2.** A "protective service" is defined by R.C. 5123.55(D) as the performance of the duties of a guardian or protector with respect to a mentally retarded or developmentally disabled person. A "protector" is defined as an agency under contract with the department of mental retardation and developmental disabilities acting with or without court appointment to provide guidance, service, and encouragement in the development of maximum self-reliance to a mentally retarded or developmentally disabled person, independent of any determination of incompetency. R.C. 5123.55(c).

**3.** Prior to its amendment, R.C. 5123.56 also permitted ODMRDD to implement this "statewide system of protective services" by either providing direct services or by accepting an appointment by a probate court as guardian of a mentally retarded person. The argument can be made that with the deletion of these two statutory alternatives, ODMRDD has been left with no alternative but to contract with other agencies to provide these services. Nevertheless, in amending the statute, the General Assembly saw fit to retain the permissive phrase "may enter into a contract" rather than imposing the requirement that ODMRDD

 Moreover, R.C. 5123.56 specifically provides that such services are to be developed "in accordance with rules and standards established by the department." This vests a great deal of discretion in ODMRDD as to the manner in which those services are to be developed and administrated. In exercise of that discretion, regulations have been issued for the express purpose of developing a system of protective services. See former Ohio Adm.Code 5123–15–01.[4]

Among other things, these regulations set forth the requisite procedure under which these protective services are to be provided. Former Ohio Adm.Code 5123–15–01(E). In short, any interested person (on behalf of a person with mental retardation) may nominate a guardian or protector by making such nomination in a letter or form prescribed by ODMRDD. Former Ohio Adm.Code 5123–15–01(E)(1)(a) and (b)(ii). Thereafter, a "comprehensive evaluation" of the individual with mental retardation must be procured. Former Ohio Adm.Code 5123–15–01(E)(1)(d). If, after the evaluation is completed, it is determined that there is a need for protective services then a contract agency shall file an application in probate court for appointment as guardian or protector. Former Ohio Adm.Code 5123–15–01(E)(2)(a).

It would appear from the record before us that this procedure was not followed below. Even if it had been followed, the regulations make it clear that the ultimate determination of whether protective services are to be provided rests with ODMRDD, or an agency under its contract. In any event, neither the regulations, nor R.C. 5123.56, imposes such a duty that a probate court may order ODMRDD to contract for their provision. Accordingly, the court below was without authority to issue such an order.

 We are equally unpersuaded that R.C. 5123.58 provides any authority for a probate court to order ODMRDD to contract for the provision of protective services. As previously set forth, R.C. 5123.58(D) makes two specific references to a guardianship appointment by the probate court. In the first reference, the statute provides that a protective services agency may

---

*shall* enter into a contract. This would suggest that some degree of discretion still exists in determining the nature and extent of those services to be provided.

**4.** These regulations were made effective in 1981, but do not reflect the statutory amendments enacted as part of Am.Sub.S.B. No. 46. To the extent that a portion of these regulations are now in conflict with the amended statute, that portion of those rules must fail. See, *e.g., Athens Home Tel. Co. v. Peck* (1953), 158 Ohio St. 557, 562, 49 O.O. 474, 475, 110 N.E.2d 571, 574. However, there is nothing which would affect the validity of that portion of the regulations which are not inconsistent with the statutory amendments. That being said, it should be noted that valid administrative rules enacted pursuant to a specific grant of statutory authority are to be given the force and effect of law. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97, paragraph one of the syllabus.

reject the nomination as guardian or it may accept that nomination subject to approval by the probate court. Thus, the probate court is not given independent power to appoint a guardian when that guardian rejects its nomination. Rather, the guardian's acceptance of the nomination and subsequent service in that capacity is, first, subject to the same approval and appointment procedure afforded to any other guardianship. See, generally, R.C. 2111.02.

The second statutory reference to a guardianship appointment by the probate court merely requires that the mentally retarded person, or the one making application on her behalf, must be informed of the procedures for terminating the guardianship either at the time the nomination is accepted or at the time the appointment is made. Thus, in neither case does the statute provide that a protective services agency may have a guardianship involuntarily thrust upon it or that ODMRDD may be ordered to contract with an agency for just such a purpose.

Our interpretation of this provision is buttressed by two additional factors. First, our holding is consistent with the general rule that the legal duties and responsibilities of a guardianship will not be placed upon a party absent that party's consent.[5] Second, provisions in the regulations specifically envision the circumstance where a protective services agency will reject an appointment after nomination. See former Ohio Adm.Code 5123–15–01(E)(3). For these reasons, we are not persuaded that R.C. 5123.58 empowered the court below to order ODMRDD to contract for the provisions of protective services for Ann Stouffer.

In its brief, ACCS cites the opinion of the Hamilton County Court of Appeals in *In re Brown* (1988), 43 Ohio App.3d 212, 540 N.E.2d 317, wherein that court reached an opposite conclusion and held that there was nothing in either R.C. 5123.56 or 5123.58 which would allow ODMRDD to reject a court appointment as a guardian. However, the issue in *Brown* was whether ODMRDD could, prior to amendment by Sub.S.B. No. 46, be ordered to accept a guardianship imposed upon it. By contrast, the issue in this case is whether ODMRDD can be ordered to contract with an agency to act as a guardian and/or protector. To that extent, *Brown* is inappositive to the cause *sub judice.*

---

5. See 39 Corpus Juris Secundum (1976) 68, Guardian and Ward, Section 30; see, also, Standard Probate Form 15.2 (Fiduciary's Acceptance—Guardian), wherein the proposed guardian signifies his acceptance of the legal duties and responsibilities of the guardianship. The standard probate forms are adopted pursuant to C.P.Sup.R. 16(A). See, also, Ohio State Bar Assn. Report (Apr. 1, 1991) at A–17, adopting a new standard form on which this acceptance is signified.

However, to the extent that the analysis of that court is inconsistent with our own, we are not persuaded by the reasoning employed in that decision. In reaching its conclusion, the Hamilton County Court of Appeals reasoned that "ODMRDD may reject a *nomination* as protector or guardian, [but] the agency may not reject a court appointment as a guardian." *Id.* at 214, 540 N.E.2d at 319. This interpretation, however, would render the entire process of accepting or rejecting the nomination a nullity. Indeed, there would be no need for a protective services agency to either accept, or reject, the nomination if the decision of whether that agency would serve as guardian was left to the sole discretion of the probate court during the appointment process.[6]

Moreover, the Hamilton County Court of Appeals reached its decision in *Brown* without a single reference to the aforementioned regulations. As stated previously, these regulations provide that, upon nomination of a guardian, the conducting of a "comprehensive evaluation" and the determination of need, a contract agency *shall* file an application in probate court to be appointed guardian. Former Ohio Adm.Code 5123–15–01(E). This is consistent with the general statutory scheme that a prospective guardian must file its own application to be appointed to such a position. See R.C. 2111.03. Inasmuch as a guardian is defined, for purposes of R.C. Chapter 2111, to include an agency under contract with ODMRDD, R.C. 2111.01(A), it would seem logical to presume that such an agency is expected to follow the normal application process to be appointed guardian rather than having a probate court involuntarily impose that capacity upon it. For these reasons, we are not persuaded by the court's reasoning in *Brown.*

In closing, we would point out that we are not unsympathetic to the policy arguments advanced below and in the party's briefs. Nevertheless, without any indication that it was the General Assembly's intention, we hold that R.C. 5123.56 and 5123.58 do not empower a probate court to order ODMRDD to contract with an agency to provide guardian and/or protector services to one who is mentally retarded. Accordingly, the first assignment of error is

---

**6.** Additionally, that court overlooked the fact that, prior to amendment, R.C. 5123.56(C) stated that with respect to the establishment of a statewide system of protective services, "the department * * * [m]ay *accept* appointment by any probate court as guardian * * *." The word "accept" generally means to agree or consent to something. Black's Law Dictionary (5 Ed.1979) 12. If the General Assembly intended that ODMRDD was to agree or to consent to its appointment as guardian, then it surely anticipated those circumstances where it would not agree with, or accept, the appointment. Moreover, an acceptance of something ordinarily implies a right to reject it as well. See *Cohen v. Mut. Benefit Health & Accident Assn.* (1944), 134 N.J.Eq. 499, 36 A.2d 288, 289. Thus, we conclude that the phrase "may *accept* appointment by any probate court as guardian" (emphasis added) also gave ODMRDD the implicit power to not accept, or reject, that appointment.

sustained and the judgment of the probate court is reversed. Pursuant to App.R. 12(B), judgment is entered for ODMRDD.

*Judgment reversed.*

PETER B. ABELE and HARSHA, JJ., concur separately in judgment only.

HARSHA, Judge, concurring.

I concur in judgment only since I believe the trial court did not have jurisdiction to order ODMRDD to enter into a contract with an agency to provide protective services for Ann Stouffer. The trial court in effect mandated that ODMRDD perform an act which the trial court found to be a clear legal duty of that department. In other words, the probate court issued a writ of mandamus without following the statutory procedure set forth in R.C. Chapter 2731. I believe mandamus to be the proper remedy because it is inconceivable to me that the legislature would charge the department with the duty to develop a plan for protective services, remove its authority to implement the plan directly, and then give the department discretion to hire agencies to implement the plan if the department saw fit. In sum, I believe that ODMRDD has a clear legal duty to enter into contracts to provide protective services under R.C. 5123.56 *et seq.* However, in order to compel the performance of such a duty, a petition or complaint in mandamus is a procedural prerequisite.